UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DARNELL ROBERT BONNER,

        Plaintiff,

v.

        Case No. 24-cv-1634-pp

JESSIE ANDREWS, PHN HEATHER,
PHN MICHELLE, PHS KEVIN, PHS SHELBY,
DR. ERIN, DAVID RUBLE, RN NURSE SKYE,
BRITTNEY, PCT WAYNE and PCT CHRIS,

        Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT

On December 19, 2024, the plaintiff—who is representing himself—filed a complaint, alleging that the defendants had violated his civil rights while he was hospitalized at the Winnebago Mental Health Institute. Dkt. No. 1. The same day, the plaintiff filed a motion for leave to proceed without prepaying the filing fee. Dkt. No. 2. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will give him an opportunity to file an amended complaint.

### I. Motion to Proceed Without Prepaying the Filing Fee (Dkt. No. 2)

An indigent federal plaintiff "may commence a civil action without prepaying fees or paying certain expenses." Coleman v. Tollefson, 575 U.S. 532, 534 (2015). To qualify to proceed without prepaying the filing fee, a plaintiff must fully disclose their financial condition, and must do so truthfully under

1

penalty of perjury. See 28 U.S.C. §1915(a)(1) (requiring the person seeking to proceed without prepayment to submit "an affidavit that includes a statement of all assets [they] possess[]").

The plaintiff's affidavit states that he is unmarried with no dependents. Dkt. No. 2 at 1. He states that he is unemployed and lists his total monthly wages or salary as $0. Id. at 1, 3. The plaintiff paid $600 in rent between October and November 2024 and asserts that he has a "few other outstanding debts" including personal and student loans, but he does not provide the monthly amount due on those debts. Id. at 3, 5. The plaintiff states that he does not own a car or any property of value. Id. at 4–5.

Based on the information in the plaintiff's affidavit, the court concludes that he does not have the ability to prepay the filing fee. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee. The court advises the plaintiff, however that he still is responsible for paying the filing fee over time. Robbins v. Switzer, 104 F.3d 895, 898 (7th Cir. 1997). When a court grants a motion allowing a plaintiff to proceed without prepaying the filing fee, it means only that the person does not have to pre-pay the full filing fee up front; the plaintiff still owes the filing fee. See Rosas v. Roman Catholic Archdiocese of Chi., 748 F. App'x 64, 65 (7th Cir. 2019) ("Under 28 U.S.C. § 1915(a), a district court may allow a litigant to proceed 'without *prepayment* of fees,' but not without *ever* paying fees.") (emphasis in original)).

## II. Screening the Complaint

### A. Legal Standard

The court next must decide whether the plaintiff has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). A document filed by a self-represented litigant must be "liberally construed[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted). Similarly, a complaint filed by a self-represented litigant, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Id. However, the court is "not charged with seeking out legal 'issues lurking within the confines' of the [self-represented] litigant's pleadings, and the court's duties certainly do 'not extend so far as to require the court to bring to the attention of the pro se litigant or to decide the unraised issues.'" Kiebala v. Boris, 928 F.3d 680, 684-85 (7th Cir. 2019) (quoting Caruth v. Pinkney, 683 F.2d 1044, 1050 (7th Cir. 1982).

Even though their filings are construed liberally, self-represented litigants still must comply with Federal Rule of Civil Procedure 8(a)(2), which requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff does not need to plead every fact supporting his claims; he needs only to give the defendants fair notice of the claim and the grounds upon which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). To state a claim against the defendants, the complaint must contain allegations that "'state a claim to relief that is plausible on its face.'" Ashcroft v.

3

Iqbal, 556 U.S. 662, 663 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth. Id. at 663-64.

B. The Plaintiff's Allegations

The plaintiff has sued several employees of the Winnebago Mental Health Institute. Dkt. No. 1. The plaintiff asserts that defendant Jessie Andrews is the director of the Winnebago Mental Health Institute and "[oversaw] as well as approved the Constitutional and civil rights violations" the plaintiff alleges. Id. at 2. The plaintiff states that defendant David Ruble is "the client rights facilitator," that he had knowledge of the constitutional and civil rights violations alleged in the complaint and that he had a "legal authority to notify the other defendants that their actions were illegal" but declined to do so. Id. at 2, 5.

The plaintiff alleges that between August 18, 2024 and August 30, 2024, he was a patient at the Winnebago Mental Health Institute as part of a Chapter 51 civil commitment proceeding after "exhibiting signs of aggression" and "manic behaviors." Id. at 5. He states that two court-appointed doctors (a Dr. Bailey and another unnamed individual) examined him during this time to determine whether a six-month civil commitment was appropriate. Id. The plaintiff says that both doctors recommended a six-month civil commitment to

4

the Department of Health Services based on the plaintiff's diagnoses of schizoaffective disorder, depression and psychosis. Id.

The plaintiff alleges that after the doctors made this recommendation,

> [d]efendant(s) Kevin, the social worker at the Winnebago Mental Health Institute on (PHS) Petersik Hall South Unit, the doctor on Petersik Hall South at the Winnebago Mental Health Institute, denied [plaintiff his] right to receive services for [his] mental illness, denied [him] the right to be accommodated for [his] disability, interfered with [his] civil liberties by the acts of deception and fraudulent information.

Id. at 6. The plaintiff asserts that the defendants told the Green Bay county courts[1] and Dr. Bailey that he "was no longer violent or aggressive and there was no need for the hearing to determine the appropriateness of the commitment." Id. He states that based on the "intentionally inaccurate and deceptive information" from defendants Kevin and the doctor on Petersik Hall South, the Chapter 51 hearing was canceled on or about August 17 to 20, 2024, which the plaintiff says denied him the full range of treatment options for his mental health disorders. Id.

The plaintiff states that he was discharged from the facility on August 20, 2024 with diagnoses of "schizoaffective disorder, depressed mood and anti-social personality disorder." Id. The plaintiff asserts that he was discharged prematurely and posed a threat to himself and the public as evidenced by the fact that defendants Kevin, the doctor on Petersik Hall South and unit manager Shelby kept him in restraints until he was out of the facility. Id. at 7. He says

---

[1] There is no "Green Bay County" in Wisconsin; the city of Green Bay is in Brown County, so perhaps the plaintiff meant the Brown County courts.

5

that he was given discharge instructions and a three-day supply of medication. Id.

The plaintiff states that the day before his discharge, he was involved in a physical altercation with the psychiatrist care technicians at the facility. Id. The plaintiff says that the defendants (though he does not specify which ones) were aware of this incident and his need for ongoing mental health treatment but chose to discharge him anyway. Id.

The plaintiff asserts that the day after his discharge, he was placed at the Granite Hills Hospital for thoughts of suicide and for ingesting unknown pills. Id. at 7–8. He says that he also was admitted to Rogers Behavioral Health the following month, in September 2024. Id. at 8. The plaintiff asserts that defendants Kevin and the doctor on Petersik Hall South "chose to deceive the court" by falsely stating that he was no longer dangerous and that his behavior had improved, instead of finding the plaintiff the right medication to treat his illnesses. Id.

The plaintiff asserts that the "remaining defendants, unit manager Heather, social worker Michelle, Doctor Erin, Registered Nurse (RN) Skye as well as the Supervisor Brittney, all who are employees at the Winnebago Mental Health Institute on Petersik Hall North Unit" denied him access to the courts. Id. He asserts that on December 2, 2024, he again was sent to the Winnebago Mental Health Institute on a Chapter 51 hold due to unsafe behaviors. Id. The plaintiff says that he completed a form in the morning requesting to speak to his social worker, "Michelle K," regarding two pending civil trials he had

6

scheduled that day. Id. at 8–9. He says that the following day he received a response directing him to speak to his attorney regarding any civil cases. Id. at 9. He asserts that the social worker also refused to give him the contact information for the Department of Human Services, instead asking whether it was "relevant" to his treatment. Id. The plaintiff alleges that his two trials in small claims court were dismissed due to his failure to appear on December 2, 2024. Id. He argues that there was no legitimate reason for defendant Michelle K. to refuse to provide him with contact information for the courthouse so he could reschedule. Id. He asserts that he was assessed court costs for the two small claims cases and lost a potential recovery of $10,000. Id.

The plaintiff next alleges that on December 2, 2024 at approximately 8:30 pm, defendants PCT Wayne and PCT Chris, under the supervision of "RN Nurse Skye and Supervisor Brittney," exercised excessive force against him by "grabbing [him] from behind in a choke hold as [he] was agitated walking to [his] room." Id. at 10. He states that he was attacked by several other unknown staff members while he was "slammed to the floor" and struggling to breathe. Id. The plaintiff states that he was then restrained, carried to his room and left there on the floor. Id. The plaintiff states that he requested medical care for injuries sustained from this incident, but that instead, his door was locked and he was placed in "seclusion status" for seven hours without access to a restroom or water. Id.

The following day at 3:30 A.M., the plaintiff, who is Muslim, states that he realized he needed to pray, which required washing several parts of his body

7

in preparation. Id. The plaintiff says that he covered his window for no more than five minutes for privacy to do this but was told that he would be placed in restraints for covering his window. Id. He says that he told the nurse that he was praying, but that staff—including defendants Wayne and Chris—still came to restrain him. Id. at 10–11. He says that the men knocked him to the floor, sexually assaulted him and choked him before strapping him to a board and carrying him to seclusion, where he was once again denied medical attention and injected with an unknown substance. Id. The plaintiff states that he was left strapped to the board for four hours despite informing staff that he was in pain. Id. at 11.

The plaintiff states that at around 8 A.M., a nurse and several staff approached him and told him he could be released from his restraints if he agreed to have his personal property removed from his room. Id. The plaintiff states that he agreed to these restrictions under duress. Id. The plaintiff alleges that he filled out a form challenging the restrictions and that under DHS policy, he was entitled to a hearing within three days but was denied this hearing. Id. at 11–12. He states that the defendants returned some of his personal property after he threatened to sue them, but that he was still denied access to television, pens and newspapers. Id. at 12. The plaintiff states that he notified DHS of the incident, and in response, defendants Michelle, Heather and Dr. Erin put out a memo notifying staff that the plaintiff was allowed to watch one hour of the news daily and that he may use pens under staff supervision. Id. He states that a week later, defendant Shelby gave the plaintiff

8

a sheet of paper notifying him of his restrictions and what he was not allowed to do. Id. He asserts that this was a "deceptive measure" to rationalize the defendants' abusive behavior after the fact. Id. The plaintiff states that Dr. Erin also attempted to "defect and undo" his medical records by altering his diagnosis from schizoaffective disorder to paranoid disorder. Id. He asserts that he informed defendant Ruble of these violations and that Ruble "agreed that [he] was being done wrong" but allowed the violations to continue. Id. at 13.

The plaintiff states that he brings these claims under the First, Fifth, Eighth, Twelfth[2] and Fourteenth Amendments to the United States Constitution, the Wisconsin constitution, and the ADA (Americans with Disabilities Act). Id. The plaintiff asserts that all defendants acted "under color of state law" when they deprived him of his rights. Id. He seeks punitive and compensatory damages and attorneys' fees. Id. at 14.

C. Analysis

Based on the facts alleged in the complaint, the plaintiff appears to be bringing the following claims: (1) denial of adequate medical care; (2) denial of access to the courts; (3) excessive use of force; (4) interference with and denial of his right to practice his religion; (5) deprivation of certain privileges without due process; (6) a claim against defendant Andrews related to his supervision of the employees who allegedly committed the civil rights violations; (7) a claim

---

[2] The Twelfth Amendment to the Constitution governs how presidents are elected. None of the allegations in the plaintiff's complaint relate to the election of a president.

against defendant Ruble based on his knowledge of the alleged civil rights violations; and (8) an ADA violation.

1. *Section 1983 Claims*

The plaintiff's first five claims allege that various defendants violated his constitutional rights. Section 1983 of Title 42 is the federal statute through which a plaintiff may bring a claim that a state actor—an employee of a state, county or local government—violated his constitutional rights. To prevail on a §1983 claim, the plaintiff must prove that (1) he was deprived of a right secured by the Constitution or laws of the United States and (2) the person who deprived him of that right was acting under color of state law. Buchanan-Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citation omitted). Under §1983, "a public employee's liability is premised on her own knowledge and actions, and therefore requires evidence that each defendant, through her own actions, violated the Constitution." Aguilar v. Gaston-Camara, 861 F.3d 626, 630 (7th Cir. 2017) (citing Burks v. Raemisch, 555 F.3d 592, 594 (7th Cir. 2009)). "[T]o be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." Pepper v. Village of Oak Park, 430 F.3d 805, 810 (7th Cir. 2005) (quotation omitted). Without evidence of personal involvement, a defendant cannot be liable under §1983. Walker v. Wexford Health Sources, Inc., 940 F.3d 954, 966 (7th Cir. 2019).

The court cannot tell from the plaintiff's complaint whether he has stated a §1983 claim against the defendants because his complaint does not clearly identify which defendants engaged in which alleged deprivations of his rights.

Although the complaint does refer to some defendants by name (or identifiers such as "the doctor on Petersik Hall South"), at other times, the plaintiff refers simply to "defendants," without identifying which defendant engaged in which alleged behavior, or the plaintiff states only that unknown staff members he doesn't name as defendants engaged in the alleged behavior. Further, the plaintiff has identified nine individuals in the case caption and twelve individuals on a separate piece of paper, so it is unclear to the court against whom the plaintiff wants to proceed.

The factual allegations in the plaintiff's complaint suggest that several individuals may have harmed him in various ways. But as the Seventh Circuit put it, "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin out of a bucket of mud." U.S. *ex rel.* Garst, 328 F.3d 374, 378 (7th Cir. 2003). The court will give the plaintiff an opportunity to amend his complaint to clarify which defendants he wants to sue and what each of those defendants did to him that he believes violated his constitutional rights.

    2.  *Claims against Jessie Andrews*

The plaintiff asserts that defendant Andrews, the facility's director, oversaw and approved the constitutional and civil rights violations that the plaintiff asserts occurred at the Winnebago facility. Dkt. No. 1 at 2. Supervisors can be held liable for constitutional violations caused by their staff where the violation happens at the supervisor's direction or with the supervisor's knowledge and consent. Hildebrant v. Ill. Dep't of Nat. Res., 347 F.3d 1014,

1039 (7th Cir. 2003). For a supervisor to face liability, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Id. However, as the court explained above, the plaintiff has not stated a claim against the Winnebago facility's employees because he did not clearly allege which defendants participated in which alleged violations. Without an underlying violation, the plaintiff cannot proceed on a supervisory liability claim against Andrews.

### 3. *Claims against David Ruble*

The plaintiff asserts that defendant Ruble, a client rights facilitator, knew of the alleged civil rights violations and refused to intervene, despite having the legal authority to do so. Dkt. No. 1 at 13. Because the complaint does not allege that Ruble was a supervisor of the other defendants, the plaintiff cannot proceed against Ruble under a supervisory liability claim. But a defendant also may have a duty to protect an individual from civil rights violations "where state action 'creates, or substantially contributes to the creation of, a danger or renders citizens more vulnerable to a danger than they otherwise would have been.'" Lewis v. Anderson, 308 F.3d 768, 773 (7th Cir. 2002) (quoting Reed v. Gardner, 986 F.2d 1122, 1126 (7th Cir. 1993)). "Alternatively, the state's duty may arise from the creation of a 'special relationship' between the state and the individual." Id. (citing Nicini v. Morra, 212 F.3d 798, 808 (3d Cir. 2000)). Be that as it may, the plaintiff cannot proceed on a claim against Ruble absent an underlying civil rights violation committed by a member or members of the Winnebago staff. The plaintiff has not stated a claim against the Winnebago

12

facility's employees because he did not clearly allege which defendants participated in which alleged violations. Without an underlying violation, the plaintiff cannot proceed on a failure to intervene claim against Ruble.

        4.      *Americans With Disabilities Act Claim*

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. §12132. The ADA defines "public entity" to mean, in relevant part, "(A) any State or local government; [or] (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. §12131. Only "public entities," and not individuals, are proper defendants under Title II of the ADA. City & County of San Francisco, Cal. v. Sheehan, 575 U.S. 600, 610 (2015) (citing Pa. Dept. of Corr. v. Yeskey, 524 U.S. 206, 208 (1998)). The plaintiff has not named a public entity as a defendant; he has named only individuals. The court will dismiss the plaintiff's ADA claim because he has not sued the appropriate defendant.

For these reasons, the court must dismiss the plaintiff's complaint, but it will do so "without prejudice." That means that the plaintiff may, if he chooses to, file an amended complaint by the deadline the court will set below. If the plaintiff decides to try to amend his complaint, there are several things he should keep in mind. An amended complaint takes the place of, or "supersedes," the original complaint. Flanner v. Recording Indus. Ass'n of Am.,

13

354 F.3d 632, 638 n.1 (7th Cir. 2004). That means that the plaintiff must include in the amended complaint all the facts supporting his claims; he cannot simply tell the court to go back and look at what he alleged in his original complaint. When writing his amended complaint, the plaintiff should give the court enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to give the court and each defendant notice of what each defendant allegedly did or did not do to violate his rights.

The court understands that the plaintiff may not know the names of some of the people whom he believes violated his rights. He may use the placeholder names "John Doe" or "Jane Doe," along with any descriptive information he can provide, to make claims against those defendants. So, for example, he may explain to the court what the "Doe defendant social worker on Petersik Hall South Unit on X date" did to violate his rights. If the court allows the plaintiff to proceed on any claims against Doe defendants, the plaintiff will have an opportunity later in the case to use discovery to learn the real names of the Doe defendants.

The court is sending with this order a blank amended complaint form. The plaintiff must use this form in preparing his amended complaint. He must put the case number for this case—24-cv-1634—in the space provided for a

case number. The plaintiff must clearly identify all the defendants by name/description in the case caption. The plaintiff should use the spaces on pages 3 and 4 to recite the facts of his claims; if that is not enough space, he may use up to three additional, double-spaced pages. The plaintiff must clearly identify the specific actions that each individual defendant took that he believes deprived him of his constitutional rights. Again, the amended complaint must be complete in itself. It may not refer the court back to allegations in the original complaint.

If the plaintiff elects to file an amended complaint, he must file it in time for the court to *receive* it by the deadline the court sets below. If the court does not receive an amended complaint by that deadline, the court will dismiss this case with prejudice and without further notice or hearing.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that the plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE**. Dkt. No. 1.

The court **ORDERS** that if the plaintiff wishes to proceed with this case, he must file an amended complaint in time for the court to receive it by the end of the day on **August 8, 2025**. If the court receives an amended complaint from the plaintiff by day's end on August 8, 2025, the court will screen that complaint to determine whether it states claims on which a federal court may grant relief. If the court does not receive an amended complaint by the end of

15

the day on August 8, 2025, the court will dismiss this case for failure to state a claim upon which relief can be granted.

Dated in Milwaukee, Wisconsin this 14th day of July, 2025.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**